ANDREW D. CASTRICONE (SBN: 154607)
acastricone@gordonrees.com
GORDON & REES LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 262-3726

Attorneys for Plaintiff
DS-CONCEPT TRADE INVEST, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| DS-CONCEPT TRADE INVEST, LLC, a Delaware Limited Liability Company<br><br>Plaintiff,<br><br>vs.<br><br>MORGAN-TODT, INC. d/b/a UNITED COLD STORAGE, a California corporation<br><br>Defendant. | CASE NO. 16-cv-02785 YGR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**<br><br>Date: December 6, 2016<br>Time: 2:00 p.m.<br>Court Room: 1, Fourth Floor<br><br>Complaint filed: May 23, 2016<br>Judge: Hon. Yvonne Gonzalez Rogers |

Plaintiff DS-CONCEPT TRADE INVEST, LLC respectfully submits the following Memorandum of Points and Authorities in Opposition to Defendant's MORGAN-TODT, INC. d/b/a UNITED COLD STORAGE ("Defendant" or "UNITED") Motion to Dismiss, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

## I. SUMMARY OF ARGUMENT/RELEVANT FACTS

After an unnecessary and delaying "facial attack" under FRCP 12(b)(1) regarding the absence of a single allegation regarding citizenship of DSC's sole member, which had already been identified to Defendant and the Court, the parties stipulated to the filing of the First Amended Complaint ("FAC") to add that allegation and to update facts that had changed following the commencement of this action.

In response to the FAC, the instant motion seeks to go beyond the pleading and matters which are subject of judicial notice by arguing a factual denial of liability, and conclusions of law, both of which are improper at this juncture. Here, the verified FAC adequately sets forth the essential elements of each of the theories of liability, with factual allegations as to UNITED's liability and DSC's claimed damages, and, as such, the motion must be denied.

In the FAC, the verified allegations of which must be taken as true, DSC asserts that UNITED had a duty to properly store the subject Pecorino Cheese, which served as collateral under DSC's factoring agreements with non-parties GOURMET FOOD IMPORTS, LLC ("GOURMET") and GORMET FOOD IMPORTS, LTD ("GORMET").[1] *See* FAC, ¶¶8-35. The FAC alleges UNITED improperly stored the collateral in which DSC had a security interest, and for which DSC had and has a claim as an unpaid vendor, and which has already resulted in this Court entering an injunction in DSC's favor. *Ibid*. DSC further contends that, as a direct result of UNITED's improper freezing the Pecorino Cheese, it was damaged and rendered unsuitable for its intended use. *See* FAC, ¶¶36-40. In addition to the financial impact on GOURMET and its ability to pay DSC, DSC alleges that UNITED's misconduct had a ripple effect in that by destroying the cheese for its intended use, UNITED also compromised DSC's ability to recover its losses by essentially eliminating the ability for GOURMET, DSC or others to try to arrange a sale of the cheese at its market value to a third party. *Id*. at ¶¶39-49.

The FAC further alleges UNITED's disclaiming of any liability, and DSC's efforts to mitigate its losses by cooperating with GOURMET in an arranged sale of the frozen cheese to a third party for an alternative use in pet food at a greatly reduced price from its original market value. *See* FAC, ¶¶39-49. Despite DSC's consent to the release of the cheese as required by the injunction, and time being of the essence, the FAC further alleges UNITED's lack of cooperation and holding the cheese hostage to extort payment of its storage fees, which was ultimately paid, to avoid loss of the proposed sale and further losses and damages, all the while causing DSC to suffer greater expense and loss of potential business. *Ibid*.

All of these facts, as well as the full allegations of the FAC, which are incorporated

---

[1] GOURMET and GORMET are collectively referred to as "GOURMET."

herein by reference, are tied into DSC's theories of negligence, third party beneficiary breach of contract, intentional and negligent interference with economic advantage, and the ongoing dispute supports the accompanying claim for declaratory relief.

## II. ARGUMENT

### A. LEGAL STANDARD

In *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), the Supreme Court held that "a complaint must contain sufficient factual matter, accepted as true, to state a plausible claim for relief. *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must construe the complaint liberally, taking all allegations as true, and drawing inferences from those allegations, viewed in the light most favorable to the plaintiff. *See e.g. Rescuecom Corp. v. Google, Inc.* 562 F.3d 123, 127 (2d Cir. 2009); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

Taking all well pleaded facts as true, the Court determines whether the complaint states a claim upon which relief may be granted. FRCP 12(b)(6); *Alperin v. Vatican Bank*, 410 F.3d 532, 541 (9th Cir.2005). Dismissal is only proper where a complaint demonstrates a "(1) lack of a cognizable legal theory or (2) the absence of sufficient facts alleged und a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). A complaint "does not require 'detailed factual allegations,'" it simply requires enough "factual content [to] allow[] a reasonable inference that the defendant is liable" for an injury to the plaintiff. *Id.*

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F.Supp.2d 1035, 1042 (CD Cal. 1998). The Court may not consider non-judicially noticeable matters outside of the complaint, such, as here, facts regarding the defendants' claimed knowledge, lack of knowledge, etc. *See Arpin v. Santa Clara Valley Transp. Agency* (9th Cir.2001) 261 F.3d 912, 925. As the bulk of the instant motion is based on facts outside of the pleading, coupled with the adequacy of the pleading of facts and the essential elements of each claim, the motion must be denied.

## B. DSC ALLEGES SUFFICIENT ALLEGATIONS OF NEGLIGENCE

Under California law (as elsewhere), "'[t]he elements of a cause of action for negligence are well established. They are '(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury.'" [Citation omitted.] *Ladd v. County of San Mateo,* 12 Cal.4th 913, 917 (1996); *see* CACI 400. In more general terms,

> Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

Cal.Civil Code §1714(a).

A duty may exist by a defendant directly to a plaintiff or to a class of which the plaintiff is a member; may arise by statute or contract; or "may be premised upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human society. [Citation.]" *Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1610 (2009); *quoting J'Aire Corp. v. Gregory* 24 Cal.3d 799, 803 (1979).

While UNITED correctly points out that a Court's analysis of the existence of a duty may ultimately be premised upon a number of factors, citing a summary judgment case as opposed to a motion to dismiss case (*Wesoloh Family Ltd. P'ship v. K.L. Wessel Const. Co.*, 125 Cal.App.4th 152 (2004)), balancing such factors (if applicable) at the pleading stage ***in this case*** warrants a finding that the pleading sufficiently alleges a duty - the adjudication of which is beyond the purview of the Court on this motion and at this juncture.

Initially, the *Wesoloh* case (at p.164) states:

> The determination whether in a specific case the defendant will be held liable to a third person ***not in privity*** is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm. [Emphasis added.]

First of all, whether there is privity between UNITED and DSC is yet another issue beyond the scope of FRCP 12(b)(6), but which (regardless of the procedural issue), DSC

maintains, is sufficiently addressed in the allegations for purposes of this motion.

Here is it alleged that UNITED is a cold storage facility that was contracted by GOURMET to properly store the Pecorino Cheese, so that it could ultimately be sold. When it was placed in storage, DSC held a security interest as an unpaid vendor, and the cheese served as collateral, under the DSC-GOURMET factoring agreement(s), and, as such, was a beneficiary of the storage agreement between GOURMET and UNITED. DSC further alleges that, after being extorted by UNITED to pay the storage fees to release the cheese, it paid for the storage, i.e. performed the contract.

In addition to such alleged privity (absent in *Wesoloh*), and since UNITED is a cold storage facility, the general character of its business also establishes a duty to safeguard the goods, a food product, it was storing from damage or spoiling, subject to liability for damage to the stored goods. *See* Cal.Comm. Code §7204(a)[2]. Unlike the plaintiffs in *Wesoloh* who could not establish a connection to the alleged injury, the damage to the cheese, which was being held for DSC's benefit, was caused solely by UNITED's improper storage, and whether or not UNITED had instructions or an independent obligation to know that cheese would be damaged if frozen, is merely another factual issue to be determined at a later date.

In addition to the allegations of privity and nature of UNITED's activity establishing an alleged duty in their own right, the analysis UNITED cites from *Wesoloh* would also establish a duty – at least the sufficient allegation of duty – that requires the instant motion be denied.

As stated above, the storage agreement was intended to benefit DSC. (Factor 1). A storage facility which stores food has foreseeability that improper storage of the goods would cause harm to a person or entity in plaintiff's position. *See* fn.2. (Factor 2). The diminution in value of the cheese caused by its freezing as opposed to refrigerated storage is alleged and established by the mitigating sale to G&K. (Factor 3, 4). The Commercial Code underscores the moral blame and policy of preventing future harm by imposing statutory liability on a warehouse for damages for improper storage. (Factors 5, 6).

---

[2] "A warehouse is liable for damages for loss of or injury to the goods caused by its failure to exercise care with regard to the goods that a reasonably careful person would exercise under similar circumstances. Unless otherwise agreed, the warehouse is not liable for damages that could not have been avoided by the exercise of that care."

Page 5

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS     Case No. 16-02785 YGR

To go further with the various factors, upon service of the injunction, UNITED had undeniable knowledge of the relationship between DSC and GOURMET, as well as the continuing obligation to store the cheese for DSC's benefit, and that it could not do anything with the cheese without DSC's consent. Yet, it continued to store the cheese improperly, further reducing its value, denied any wrongdoing, and demanded payment of storage fees which continued to jeopardize GOURMET, DSC, and G&K Sales – the only identified buyer.

In sum, DSC has adequately alleged a claim for negligence.

### C. DSC SUFFICIENT ALLEGES IT IS A THIRD PARTY BENEFICIARY

UNITED claims that DSC is not a third-party creditor beneficiary under the storage agreement between GOURMET and UNITED, relying on *Epitech, Inc. v. Kann*, 204 Cal.App.4th 1365 (2012), which states:

> Whether a third party is an intended beneficiary … to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered.' " (*Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337, 349 [87 Cal.Rptr.2d 856].) "'Generally, it is a question of fact whether a particular third person is an intended beneficiary of a contract,' which we review under the substantial evidence standard. [Citation.] If, however, as here, the issue is presented to the court on the basis of undisputed facts and uncontroverted evidence and only a question of the application of the law to those facts need be answered, our review is de novo: '[W]here … the issue [of whether a third party is an intended beneficiary] can be answered by interpreting the contract as a whole and doing so in light of the uncontradicted evidence of the circumstances and negotiations of the parties in making the contract, the issue becomes one of law that we resolve independently.' [Citation.]" (*Souza v. Westlands Water Dist*. (2006) 135 Cal.App.4th 879, 891 [38 Cal.Rptr.3d 78].)

*Epitech, Inc. v. Kann, supra,* 204 Cal.App.4th at 1371-1372. Initially, the complete terms and conditions of the storage agreement are not fully set forth in the FAC, nor addressed in the motion. There is no evidence (beyond the scope of the motion) of the parties' intent, nor undisputed, uncontradicted or uncontroverted evidence. What is *relevant* for ruling on the motion are the following allegations, which along with all reasonable inferences, must be taken as true and viewed in the light most favorable to DSC:

> 63. The cheese was being stored in UNITED's facility for the benefit of DSC to receive proceeds from its ultimate sale. Under the contract with GOURMET, UNITED agreed to perform or carry out its duties in a reasonable and competent manner, and to ensure that the cheese was stored properly to maintain its condition and value.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS    Case No. 16-02785 YGR

64. When UNITED was served with the injunction and continuing thereafter, it knew that, in addition to proper storage, UNITED would be called on to retrieve and prepare the stored cheese for eventual sale.

65. In failing to store the cheese properly and refusing to release the cheese, UNITED has breached its obligations to GOURMET, and therefore is also liable for such breach to DSC. Following actual knowledge of DSC and its relationship to GOURMET and the cheese, including, but not limited to the injunction and knowledge and authorization for the sale of the cheese to G&K Sales, UNITED was in further breach of its contact and obligations to GOURMET and DSC – especially where, as here, UNITED refused to release the cheese without prior payment of approximately $50,000 in allegedly due and owing storage fees by GOURMET. As a result of UNITED's actions, DSC has been damaged and irreparably harmed, and the claimed full value of the collateral (approximately $2 Million less monies received for the cheese (further reduced by the demanded storage fees)), is in an amount in excess of the jurisdictional minimum of this Court said damages to be finally determined at trial, together with interest on that sum at the legal rate.

FAC, pp.13:11-14:1. While it is true that DSC "does not allege that United was obligated by the Storage Agreement to [directly] pay Plaintiff the monies allegedly owed it by Gourmet,[3]" UNITED is incorrect regarding the discharge of obligations. UNITED's misplaced reliance on the *Epitech* case for the proposition that "[a] person cannot be a creditor beneficiary unless the promisor's performance of the contract will discharge some form of legal duty owed to the beneficiary by the promise" is inapplicable in this context. Here, had UNITED properly stored the cheese, the collateral in which DSC held a security interest would have been able to be sold at its full value and would have discharged GOURMET's obligations regarding this collateral. For clarification, the full value of the cheese if not damages is alleged to have been $1,775,611.89. FAC, ¶37, p.8:20-26. In the New Jersey action, the claim against GOURMET (as of December 29, 2015) was alleged to be only $1,686,794.09. See FAC, Ex. "F," ¶¶54-65, pp.11-12. As a result, there are sufficient allegations of third party beneficiary status to withstand the motion.

### D. THE INTERFERENCE CLAIMS ARE SUFFICIENTLY ALLEGED

As set forth in the motion, the essential elements for the interference claims are similar.

---

[3] Motion, p.6:22-23.

*See* CACI 2202, 2204. To allege intentional interference with economic advantage, a plaintiff must assert (1) an economic relationship with a third party, with probable future economic benefit; (2) defendant's knowledge of the relationship; (3) the defendant's intentional acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the acts of the defendant. *Youst v. Longo* (1987) 43 Cal.3d 64, 71, fn. 6; *Popescu v. Apple Inc.,* 1 Cal.App.5th 39, 63 (2016). The claim does not require the existence of a valid contract. *Id*. at p.63. The negligence claim merely changes the second and third elements to a "knew or should have known" standard. *See* CACI 2204.

In direct contradiction of the standards for a motion to dismiss, UNITED asserts it cannot be liable for intentional interference because it had no knowledge of the existence of the factoring agreement. There is no evidence of such lack of knowledge, nor is such evidence permitted to be introduced in this type of motion.

In the FAC, DSC alternatively pleads that UNITED either did know of the factoring agreements or knew or should have known of them (or the relationship of DSC and GOURMET, or DSC's security interest/collateral), and that the improper storage of the cheese disrupted the relationship with GOURMET and DSC's resulting ability to recover under the factoring agreements via UNITED's damaging DSC's collateral/security interest. DSC further alleges that, the injunction placed UNITED on further notice of the DSC's relationship to GOURMET and the cheese, and, finally, that when told of a potential buyer, UNITED interfered with that transaction by holding the damaged cheese hostage until it was paid for storage fees. While cavalierly asserting a possessory lien under Cal.Comm Code §7209, UNITED ignores its liability under §7204, *supra*. Presumably, UNITED will also try to argue a failure to mitigate for failing to sell to UNITED's undisclosed buyer, the disclosure of which could have served to lessen the interference with DSC's relations with GOURMET.

Once again, UNITED relies on a summary judgment case in an effort to extricate itself at the pleading stage, *citing Crown Imports, LLC v. The Superior Court of Los Angeles County*, 223 Cal.App.4th 1395, 1404 (2014). Regardless of this error in procedural argument, what is clear in all of these allegations, which, again, must be taken as true, is UNITED is simply attempting to

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS  Case No. 16-02785 YGR

evade liability for the damage and losses caused by its independently wrongful misconduct – freezing the cheese.

### E. DSC'S POSITION ON THE DECLARATORY RELIEF CLAIM

The declaratory relief claim was asserted in the original complaint in relation to then existing controversy and as a result of the need to address ongoing and future wrongdoing, as well as the concurrent effort to secure an injunction.

While there continues to be a need for a determination of the parties' rights, duties, and obligations, it does appear that DSC's amended claims may be fully asserted in the other causes of action, subject to further discovery and investigation. If the Court determines that it should decline to hear the claim for declaratory relief because the adjudication of the issues raised in the other theories of liability would fully and adequately determine all matters actually in controversy between the parties, DSC would not oppose the dismissal of this claim only – without prejudice pending additional discovery and investigation.

### III. CONCLUSION

For the foregoing reasons, it is respectfully requested that the motion to dismiss be denied in its entirety, subject to the qualification regarding the declaratory relief claim. Should the Court grant any part of the motion, it is respectfully requested that DSC be granted leave to amend.

Dated:  November 4, 2016         GORDON & REES LLP

By _____
    Andrew D. Castricone
Attorneys for Plaintiff
DS-CONCEPT TRADE INVEST, LLC