1

2

3                       UNITED STATES DISTRICT COURT

4                       NORTHERN DISTRICT OF CALIFORNIA

5

6    **DS-CONCEPT TRADE INVEST, LLC**,              Case No. 16-cv-02785-YGR

7                        Plaintiff,

8              v.                                   **ORDER GRANTING MOTION TO DISMISS
                                                    WITHOUT PREJUDICE**
9    **MORGAN-TODT, INC.**,
                                                    Re: Dkt. No. 27
10                       Defendant.

11

12          This case concerns 573,350.93 pounds of pecorino cheese ("the cheese") that defendant

13   Morgan-TODT, Inc., d/b/a United Cold Storage, allegedly stored improperly in the freezer, rather

14   than the refrigerator, for the account of a third-party, Gourmet Food Imports, LLC ("Gourmet").

15   Plaintiff DS-Concept Trade Invest, LLC alleges it had a security interest in the cheese, and that

16   defendant's improper storage of the cheese diminished the value of the cheese because it was no

17   longer fit for human consumption after being frozen. Plaintiff also alleges that defendant held the

18   cheese hostage, until it received its storage payments, when plaintiff tried to mitigate its damages

19   by selling the cheese to a pet food manufacturer, G&K Sales. In addition, plaintiff alleges that

20   defendant claimed it could secure a higher price for the cheese, but never revealed the alternative

21   purchaser to plaintiff.

22          In a separate lawsuit, plaintiff also sued Gourmet to enjoin Gourmet from taking any action

23   with the cheese after Gourmet's alleged breach of its contract with plaintiff. This Court issued an

24   injunction in plaintiff's favor, advising defendant—after the cheese had already been placed in the

25   freezer—that plaintiff had the right and authority to act on Gourmet's behalf to communicate with

26   defendant regarding the cheese, and that the cheese could not be sold without plaintiff's consent.

27          In this case, plaintiff has asserted a five (5) count complaint against defendant alleging: (1)

28   Negligence; (2) Third Party Breach of Contract; (3) Intentional Interference with Economic

Advantage; (4) Negligent Interference with Economic Advantage; and (5) Declaratory Relief arising from defendant's alleged failure to store the cheese properly or in a proper manner for Gourmet. (Dkt. No. 25, "Complaint.") Defendant filed a motion to dismiss all counts of plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 27.)

Having carefully considered the pleadings and the papers submitted on this motion, and for the reasons set forth below, the Court **GRANTS** defendant's motion and **DISMISSES** Counts One through Five **WITHOUT PREJUDICE**.

### STANDARD APPLICABLE TO THE MOTION

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 554–55 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks

United States District Court
Northern District of California

1   omitted)). The Court will not assume facts not alleged, nor will it draw unwarranted inferences.

2   *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief [is] a

3   context-specific task that requires the reviewing court to draw on its judicial experience and

4   common sense.").

5                                              **DISCUSSION**

6            Defendant moves to dismiss each of plaintiff's five causes of action. The Court addresses

7   each in turn.

8   **I.        Count One: Negligence**

9            Under California law, "[t]he elements of a cause of action for negligence are well

10  established. They are (a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the

11  breach as the *proximate or legal cause* of the resulting injury." *Ladd v. County of San Mateo*, 12

12  Cal. 4th 913, 917 (1996) (citation and internal quotation marks omitted). A duty may be owed by a

13  defendant directly to a plaintiff or to a class of which the plaintiff is a member, may arise by

14  statute or contract, or "may be premised upon the general character of the activity in which the

15  defendant engaged, the relationship between the parties or even the interdependent nature of

16  human society." *Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594, 1610 (2009) (citation

17  and internal quotation marks omitted).

18           The parties dispute whether defendant owed plaintiff a duty of care to store the cheese

19  properly pursuant to plaintiff's relationship with Gourmet. In its motion to dismiss, defendant

20  argues that defendant and plaintiff are not in privity with one another, and that defendant does not

21  owe plaintiff a duty of care under the six factors established by the California Supreme Court for

22  cases where there is no contractual privity. (Dkt. No. 27 at 2.) In its opposition, plaintiff argues

23  that there was contractual privity and that, regardless, defendant owed plaintiff a duty of care

24  under the California Supreme Court's six-factor test for cases where there is no privity. (Dkt. No.

25  30 at 4-6.) Plaintiff also argues that the "general character of [defendant's] business" also

26  established a duty. (*Id.* at 5.)

27  **A.  Contractual Privity**

28           Upon reviewing plaintiff's complaint, the Court finds that no allegations exist indicating

*United States District Court*
*Northern District of California*

3

contractual privity between plaintiff and defendant. To the contrary, plaintiff's complaint actually alleges that **defendant and Gourmet** had an agreement to store the cheese. (Compl. at ¶ 34.) Thus, plaintiff has not alleged facts sufficient to show there was contractual privity between itself and defendant.

**B.** *Biakanja* **and** *Bily* **Factors for Determining Duty Where There is No Contractual Privity**

In alleging whether a duty of care is owed where no contractual privity exists, the complaint should include facts sufficient to satisfy the following factors: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. *See Weseloh Family Ltd. P'ship v. K.L. Wessel Const. Co.*, 125 Cal. App. 4th 152, 164-65 (2004), discussing the factors set forth in *Biakanja v. Irving*, 49 Cal. 2d 647 (1958) and *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370 (1992). For the reasons outlined below, the Court finds that the facts as alleged are insufficient to support a finding of duty under the six *Biakanja* and *Bily* factors.

With respect to the first factor, plaintiff relies solely on the notion that, in its view, the storage agreement between defendant and Gourmet was intended to benefit plaintiff. (*See* Dkt. No. 30 at 5.) However, plaintiff has alleged no facts in support of this legal conclusion.

With respect to the second factor, plaintiff's complaint alleges that defendant acquired knowledge of plaintiff only after being served with the injunction, and that defendant placed the cheese in its freezer for storage prior to being served with the injunction. (Compl. at ¶¶ 35, 53, 68.) These allegations alone are insufficient to plead foreseeability of plaintiff's injury at the time defendant placed the cheese in the freezer. Plaintiff has also failed to allege any other facts that would give rise to an inference that defendant knew or should have known that a person or entity in plaintiff's position existed at the time it negligently placed the cheese in the freezer. Plaintiff may be able to allege that defendant owed it a duty after being served the injunction, but plaintiff does not appear to allege any negligent acts after the cheese had already been placed in the freezer.

United States District Court
Northern District of California

With respect to the third and fourth factors, plaintiff argues that defendant owed plaintiff a duty of care because the "diminution in value of the cheese caused by its freezing as opposed to refrigerated storage is alleged and established by the mitigating sale to G&K." (Dkt. No. 30 at 5.) However, even if the cheese lost value as a result of being frozen instead of refrigerated, this is not the source of plaintiff's injury. Any injury suffered by plaintiff is because Gourmet failed to pay plaintiff, which Gourmet is obligated to do regardless, and which is the subject of a separate lawsuit.

Finally, with regard to the fifth and sixth factors, plaintiff argues that defendant owed plaintiff a duty of care because the California Commercial Code "underscores the moral blame and policy of preventing future harm by imposing statutory liability on a warehouse for damages for improper storage." (*Id.*) However, plaintiff fails to explain how the Commercial Code creates statutory liability to plaintiff rather than to Gourmet. Moreover, if it is ultimately determined that defendant did, in fact, store the cheese negligently, Gourmet may still hold defendant liable for its negligence. In fact, Gourmet has filed a lawsuit against defendant seeking to do just that. *See* Superior Court of California, County of San Francisco, Case Number CGC 16 552621.

### C.  General Character of Defendant's Business

Plaintiff also argues that because defendant is a storage facility, the general character of its business also establishes a duty to safeguard the goods, a food product, from damage or spoiling pursuant to California Commercial Code section 7204(a). (Dkt. No. 30 at 5.) However, plaintiff fails to explain how the "general character of [defendant's] business" gives rise to a duty of care owed to plaintiff, rather than to Gourmet, with whom defendant had an agreement to store the cheese. Defendant concedes that it was under a duty to safeguard the goods, but that the duty extended only to Gourmet. Plaintiff presents no authority to the contrary.

For the reasons outlined above, the Court therefore **GRANTS** defendant's motion to dismiss Count One without prejudice.

## II.  Count Two: Third-Party Breach of Contract

Plaintiff alleges that it is a third-party beneficiary of the storage agreement between defendant and Gourmet because it is a creditor beneficiary arising from its security interest in the

cheese and from Gourmet's obligation to pay plaintiff the proceeds from the sale of the cheese. (Compl. at ¶¶ 61, 63, and 65.) Under California law, "[a] creditor beneficiary is a party to whom a promisee owes a preexisting duty which the promisee intends to discharge by means of a promisor's performance. A person cannot be a creditor beneficiary unless the promisor's performance of the contract will discharge some form of legal duty owed to the beneficiary by the promisee. . . .[I]t is not enough that the third party would incidentally have benefited from performance." *Epitech, Inc., v. Kann*, 204 Cal. App. 4th 1365, 1372 (2012) (citations and internal quotation marks omitted). Thus, for plaintiff to be a third-party creditor beneficiary to the storage agreement between defendant and Gourmet, plaintiff would have to establish that the discharge of the obligation owed by defendant to Gourmet would also discharge a preexisting obligation owed by Gourmet to plaintiff.

Here, plaintiff admits that it "does not allege that [defendant] was obligated by the Storage Agreement to directly pay [plaintiff] the monies allegedly owed it by Gourmet . . . ." (Dkt. No. 30 at 7.) Instead, it argues that "had [defendant] properly stored the cheese, the collateral in which [plaintiff] held a security interest would have been able to be sold at its full value and would have discharged Gourmet's obligations regarding this collateral." (*Id.*) California law requires more than the allegation that a defendant's performance would have simply made it more likely for a party to fulfill its preexisting obligations to a creditor. *See Epitech,* 204 Cal. App. 4th at 1373-74. Such an incidental result of defendant's performance does not establish third-party beneficiary status. *See id.* Further, given the lack of briefing, it is unclear whether the discharge must be complete or whether partial discharge is sufficient.

Thus, the Court **GRANTS** defendant's motion to dismiss Count Two without prejudice.

### III. Counts Three and Four: Intentional and Negligent Interference with Economic Advantage

The elements for intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the

relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Korea Supply Co., v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). The third element requires plaintiffs to plead "intentional wrongful acts on the part of the defendant designed to disrupt the relationship." *Id.*

The elements for negligent interference with prospective economic advantage are similar: (1) an economic relationship between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship. *N. Am. Chem. Co., v. Superior Court*, 59 Cal. App. 4th 764, 786 (1997).

Plaintiff's claims for intentional and negligent interference with economic advantage each rest on two alleged acts: (1) defendant's alleged improper storage of the cheese and (2) defendant's alleged refusal to allow the cheese to be removed from storage until defendant's storage fees were paid. Plaintiff's claim for intentional interference also alleges that defendant refused to disclose the identity of a potential buyer of the cheese to plaintiff. The Court addresses each in turn.

**A.  Defendant's Alleged Improper Storage of the Cheese**

Defendant's motion focuses on plaintiff's failure to allege the second element regarding knowledge. Plaintiff counters that it has pled that defendant "either did know of the factoring agreements or knew or should have known of them (or the relationship of [plaintiff] and Gourmet, or [plaintiff's] security interest/collateral) . . . ." (Dkt. No. 29 at 8.) The complaint contains no such reference. Rather, plaintiff's complaint merely asserts that defendant only learned of plaintiff after the issuance of the injunction, at which point the cheese had already been placed in the freezer. (Compl. at ¶¶ 35, 53, 68.) In the absence of facts alleging that defendant knew of the

7

relationship between plaintiff and Gourmet before placing the cheese in the freezer, defendant's alleged improper storage of the cheese cannot give rise to an economic interference claim.

**B.   Defendant's Alleged Refusal to Allow the Cheese to be Removed from Storage until Defendant's Storage Fees were Paid**

Plaintiff alleges that defendant refused to release the cheese until it was paid its storage fees even after learning of the potential sale to G&K Sales. (*Id*. at ¶ 69.) However, for this to give rise to an economic interference claim, plaintiff would also have to allege that this act by defendant actually disrupted its relationship with G&K Sales. Plaintiff does not. Rather, plaintiff has alleged that the storage fees were paid and the sale to G&K Sales went through as planned. (*Id*. at ¶ 49.) Thus, plaintiff's alleged economic interference claim seems unlikely and amendment futile.

**C.   Defendant's Alleged Refusal to Disclose the Name of a Potential Buyer of the Cheese**

Finally, plaintiff alleges that defendant refused to disclose the name of a potential buyer of the cheese. (Compl. at ¶ 69.) Even if this is true, this cannot give rise to an economic interference claim because plaintiff had no relationship with the undisclosed buyer that was subject to interference.

For the reasons outlined above, the Court **GRANTS** defendant's motion to dismiss Counts Three and Four without prejudice, but reminds plaintiff's counsel of its obligations pursuant to Federal Rule of Civil Procedure 11.

**IV.   Count Five: Declaratory Relief**

In its opposition to this motion, plaintiff appears to agree that that an adjudication of its Counts One through Four will fully and adequately determine all matters actually in controversy between plaintiff and defendant. (Dkt. No. 30 at 9.) Thus, the Court **GRANTS** defendant's motion to dismiss Count Five without prejudice.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** defendant's motion to dismiss as follows: Counts One through Five are **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall file an amended complaint within fourteen (14) days of this Order and defendant shall file a responsive pleading

1   fourteen (14) days thereafter.

2       This order terminates Docket No. 27.

3       It Is So Ordered.

4   Dated: December 7, 2016

5

6   YVONNE GONZALEZ ROGERS
    UNITED STATES DISTRICT COURT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

9