1  ANDREW D. CASTRICONE (SBN: 154607)
   acastricone@gordonrees.com
2  GORDON & REES LLP
   275 Battery Street, Suite 2000
3  San Francisco, CA 94111
   Telephone:    (415) 986-5900
4  Facsimile:    (415) 262-3726

5  Attorneys for Plaintiff
   DS-CONCEPT TRADE INVEST, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| DS-CONCEPT TRADE INVEST, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>MORGAN-TODT, INC. d/b/a UNITED COLD STORAGE, a California corporation,<br><br>Defendant. | CASE NO. 16-cv-02785 YGR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Hrg. Date:    May 16, 2017<br>Hrg. Time:    2:00 p.m.<br>Courtroom:   1, Fourth Floor, Oakland<br><br>Complaint filed: May 23, 2016<br>Hon. Yvonne Gonzalez Rogers |

Plaintiff DS-CONCEPT TRADE INVEST, LLC ("Plaintiff" or DSC") respectfully submits this opposition to the Motion to Dismiss and Strike its Third Amended Complaint filed by Defendant MORGAN DT, INC. d/b/a UNITED COLD STORAGE ("Defendant" or "Morgan"), pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), (f).

## I. SUMMARY OF ARGUMENT/RELEVANT FACTS

This action relates to Defendant's (a cold storage facility) improper storage of imported Pecorino Romano Cheese, with a market value of $1,775,611.81 – had it not been damaged by Defendant's acts and omissions. In addition to rights to the proceeds of any sale of the cheese under a "Factoring Agreement," DSC also held a beneficial or security interest in the cheese, as well as all rights, title, and interest in the cheese itself which it had been assigned.

The original complaint contained causes of action for negligence, intentional and

Page 1

negligent interference with economic advantage; third party beneficiary breach of contract; and declaratory relief. After an unnecessary and delaying "facial attack" under FRCP 12(b)(1) regarding the absence of a single allegation regarding citizenship of DSC's sole member, which had already been identified to Defendant and the Court, the parties stipulated to a First Amended Complaint ("FAC") to add the missing allegation and update facts that had changed following the commencement of this action.

In response to the FAC, Defendant filed a Motion to Dismiss, which was granted, without prejudice, by this Court on December 7, 2016. In general, the Order was premised upon the lack of sufficient facts to state a claim for relief on the first four counts. The Court also confirmed plaintiff's voluntary withdrawal of the declaratory relief claim as resolution of the first four counts would determine all matters in controversy.

Plaintiff sought to address the factual deficiencies in its December 21, 2016 Second Amended Complaint ("SAC"), which retained the four claims for relief. Defendant filed a renewed Motion to Dismiss on December 29, 2016. Prior to the deadline for any Opposition, the parties attended a Case Management Conference on January 9, 2017. During the conference, the court reviewed a redline copy of the SAC and discussed and questioned some of the new and revised allegations with counsel, including comments by the Court on a general need to include foundational facts for allegations that were made upon information and belief. ***Contrary to the representations in the pending Motion, there was no advisement or order on the merits or sufficiency of the pleading, i.e. whether any of the claims stated facts upon which relief could be granted***. Rather, counsel advised the Court they would discuss the sufficiency of the allegations and challenges raised by the motion, together with the possibility of a Third Amended Complaint in lieu of proceeding on the Motion. After doing so, the parties filed a stipulation whereby UNITED would withdraw its Motion, and DSC would file a Third Amended Complaint. The Court entered an order on the stipulation, denying the motion as moot, and granting leave for filing a Third Amended Complaint.

In deference to the Court's prior Order and discussions with the Court and counsel, DSC narrow its pleading to a single negligence claim. The operative and verified Third Amended

Page 2

Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint       16-cv-02785 YGR

Complaint ("TAC") added and revised allegations to demonstrate the factual basis for DSC's claims that Defendant owed DSC a duty, and that its acts and omissions relating to the improper storage of the cheese caused DSC to suffer damages. While the other three claims for relief were eliminated, some of those allegations were retained as they both completed the picture to demonstrate the adequate pleading of the negligence claim, together with Plaintiff's efforts to mitigate its damages (despite UNITED's obstruction with some of those efforts).

While DSC opines that the instant pleading addresses the points previously raised by the Court, the Defendant has once again moved to dismiss the negligence claim on the same grounds previously asserted, and alternatively moves to strike what it considers to be superfluous allegations from the dismissed claims.

As with is prior rendition, the instant motion seeks to go beyond the pleading and matters which are subject of judicial notice by arguing a factual denial of liability, and conclusions of law, both of which are improper at this juncture. Here, the TAC adequately sets forth the essential elements of the negligence claim, with factual allegations as to UNITED's liability and DSC's claimed damages, and, as such, the motion must be denied.

In the TAC, the verified allegations of which must be taken as true, DSC asserts that it had a security or beneficial interest in the subject cheese, which UNITED had a duty to properly store, and which served as collateral under DSC's factoring agreements with non-parties GOURMET FOOD IMPORTS, LLC ("GOURMET") and GORMET FOOD IMPORTS, LTD ("GORMET"), as well as UNITED and GOURMET's storage agreement, and customs, standards, and practices in the industry. *See* TAC, ¶¶8-35. The TAC alleges UNITED improperly stored the cheese in which DSC had a security interest, and for which DSC had and has a claim as an unpaid vendor, and which has already resulted in this Court entering an injunction in DSC's favor. *Ibid*. DSC further contends that, as a direct result of UNITED's improper freezing the Pecorino Cheese, it was damaged and rendered unsuitable for its intended use. *See* TAC, ¶¶36-40. In addition to the financial impact on GOURMET and its ability to pay DSC, DSC alleges that UNITED's misconduct had a ripple effect in that by destroying the cheese for its intended use, UNITED also compromised DSC's ability to recover its losses by

Page 3

essentially eliminating the ability for GOURMET, DSC or others to try to arrange a sale of the cheese at its market value to a third party. *Id.* at ¶¶39-49.

The TAC further alleges UNITED's disclaiming of any liability, and DSC's efforts to mitigate its losses by cooperating with GOURMET in an arranged sale of the frozen cheese to a third party for an alternative use in pet food at a greatly reduced price from its original market value. *See* TAC, ¶¶39-49. Despite DSC's consent to the release of the cheese as required by the injunction, and time being of the essence, the TAC further alleges UNITED's lack of cooperation and holding the cheese hostage to extort payment of its storage fees, which was ultimately paid, to avoid loss of the proposed sale and further losses and damages, all the while causing DSC to suffer greater expense, loss of potential business and impinging upon its mitigation efforts. *Ibid*.

The TAC further alleges that prior to the storing of the cheese, GOURMET unequivocally agreed to assign all of their rights, title and interest in, inter alia, the accounts receivable *and* the merchandise (the cheese) that comprises the transaction. *See* TAC, ¶¶51-57. Plaintiff further alleges, based on industry customs and practices, upon information and belief, under the agreement(s) with GOURMET, as well as a food cold storage facility's general standard of care, that UNITED agreed and was obligated to perform or carry out its duties in a reasonable and competent manner, and to ensure that the cheese was stored properly to maintain its condition and value for not only GOURMET, but also for third parties with any beneficial and/or security interest and/or assigned rights, such as DSC. *Ibid*.

The TAC alleges that, regardless of the absence of any direct contract between Plaintiff and Defendant, UNITED knew or reasonably should have known that it also needed to ensure that the cheese was properly stored at the appropriate temperature and other conditions, and to advise GOURMET and DSC of any storage issues that might compromise the integrity, quality, or value of the cheese. *See* TAC, ¶¶57-56. DSC further alleges that Defendant failed to advise GOURMET and DSC of the actual storage conditions and negligently and carelessly handled and/or stored the cheese so as to cause it to be damaged. *Ibid*. All of these facts, as well as the full allegations of the TAC, which are incorporated herein by reference, sufficiently plead a negligence claim.

Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint     16-cv-02785 YGR

In addition, as stated above, Plaintiff maintains that UNITED's full conduct is relevant to the negligence claim, including, but not limited to its allegations regarding its mitigation efforts. While such allegations may be deemed unnecessary to plead the essential core elements of its negligence claim, they are clearly not "redundant, immaterial, impertinent, or scandalous" to be subject to a motion to strike under Rule 12(f).

As such, it is respectfully requested that the motion be denied.

## II. ARGUMENT

### A. LEGAL STANDARD

In *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), the Supreme Court held that "a complaint must contain sufficient factual matter, accepted as true, to state a plausible claim for relief. *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must construe the complaint liberally, taking all allegations as true, and drawing inferences from those allegations, viewed in the light most favorable to the plaintiff. *See e.g. Rescuecom Corp. v. Google, Inc.* 562 F.3d 123, 127 (2d Cir. 2009); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

Taking all well pleaded facts as true, the Court determines whether the complaint states a claim upon which relief may be granted. FRCP 12(b)(6); *Alperin v. Vatican Bank*, 410 F.3d 532, 541 (9th Cir.2005). Dismissal is only proper where a complaint demonstrates a "(1) lack of a cognizable legal theory or (2) the absence of sufficient facts alleged und a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). A complaint "does not require 'detailed factual allegations,'" it simply requires enough "factual content [to] allow[] a reasonable inference that the defendant is liable" for an injury to the plaintiff. *Id.*

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F.Supp.2d 1035, 1042 (CD Cal. 1998). The Court may not consider non-judicially noticeable matters outside of the complaint, such, as here, facts regarding the defendants' claimed knowledge, lack of knowledge, etc. *See Arpin v. Santa Clara Valley Transp. Agency* (9th Cir.2001) 261 F.3d 912, 925. With respect to

Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint 16-cv-02785 YGR

matters outside of the pleading, coupled with the adequacy of the pleading of facts and the essential elements of the sole claim for negligence, the motion to dismiss must be denied.

### B. DSC ALLEGES SUFFICIENT ALLEGATIONS OF NEGLIGENCE

In the TAC, Plaintiff has removed all theories of liability but for a general negligence claim. Under California law (as elsewhere), "'[t]he elements of a cause of action for negligence are well established. They are '(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury.'" [Citation omitted.] *Ladd v. County of San Mateo,* 12 Cal.4th 913, 917 (1996); *see* CACI 400. In more general terms,

> Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

Cal. Civil Code §1714(a).

A duty may exist by a defendant directly to a plaintiff or to a class of which the plaintiff is a member; may arise by statute or contract; or "may be premised upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human society. [Citation.]" *Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1610 (2009); *quoting J'Aire Corp. v. Gregory* 24 Cal.3d 799, 803 (1979).

In the Court's Order on the Motion to Dismiss filed in response to the FAC, the Court analyzed a number of factors, citing a summary judgment case. *Wesoloh Family Ltd. P'ship v. K.L. Wessel Const. Co.*, 125 Cal.App.4th 152 (2004), which discussed *Biakanja v. Irving*, 49 Cal.2d 647 (1958) and *Bily v. Arthur Young & Co.*, 3 Cal.4th 370 (1992).

In *Wesoloh,* the Court noted (at p.164):

> The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm. [Emphasis added.]

The balancing of such factors ***at the pleading stage*** in this case, and based on the new and revised allegations and foundational facts that were not present and/or may have been less

Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint     16-cv-02785 YGR

clear in the pleading at the time of the Court's prior ruling, now warrants a finding that the pleading now sufficiently alleges a duty - the final adjudication of which is beyond the purview of the Court on this motion and at this juncture.

As it has been noted, *Wesoloh* was determined in a ***summary judgment*** context – "where the Court is provided with a surplus of evidence through discovery in making its ruling." *Schrock v. Taser Int'l, Inc.* 2014 U.S.Dist.LEXIS 176326, at *9, (C.D.Cal. Dec. 19, 2014, No. ED CV 14-02142-AB (DTBx) Due to the factual (i.e. evidentiary) analysis that must be made to determine the nonexistence of a duty as a matter of law, it would be improper to grant a motion to dismiss at this, still preliminary stage, of the litigation. *See e.g. Rafael Town Ctr. Investors v. Weitz Co.* 2007 U.S.Dist.LEXIS 42625, at *8 (N.D.Cal. May 31, 2007, No. C 06-6633 SI).

In assessing the *Wesoloh*, *Biiakanja*, and *Bily* factors in specific contexts, the California Supreme Court has more recently focused on the precise case facts to determine whether they align or contrast with the concerns expressed in *Bily*, leading to the *Bily* Court's duty determination to narrow the scope of duty from an infinite number of plaintiffs. *Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, 581. In contrasting *Wesoloh*, the Supreme Court also highlighted the procedural difference when it affirmed the reversal of Defendant's demurrer on the duty issue. "Moreover, the *Weseloh* court, reviewing the case at the summary judgment stage, concluded that the plaintiffs had 'failed to produce evidence showing how and the extent to which their damages were caused by the asserted design defects.'" *Beacon Residential Community Assn, supra,* 59 Cal.4th at 587, *citing Weseloh*, *supra*, 125 Cal.App.4th at p.168. As the Court noted in *Beacon*, "we conclude that the allegations in the complaint are sufficient, ***if proven***, to establish that defendants owed a duty of care. . . ." [Emphasis added.] *Id*. at 585-586. UNITED is therefore free to challenge the allegations and existence of a duty via discovery and subsequent motions or adjudication on the evidence, but not at this procedural juncture.

In addressing the sufficiency of allegations of duty in ruling on a demurrer at the pleading stage, the *Beacon* court focused on three primary considerations, which, paraphrased for the facts here, suggest DSC's sufficient pleading for purposes of withstanding attack via a motion to

Page 7

dismiss. They are (1) the closeness of the connection between UNITED's conduct and DSC's damages; (2) the limited and wholly evident class of persons and transactions that UNITED's conduct was intended to affect; and (3) the absence of other options that could protect Plaintiff from harm. *Ibid*.

The TAC alleges (1) UNITED was the storage facility that improperly froze the cheese and caused DSC's alleged damages; (2) UNITED's storage was intended to benefit the owner of the cheese (DSC – whether disclosed or not), the party storing the cheese (GOURMET), buyers, and post sale consumers (if the cheese had spoiled or been contaminated); and (3) While UNITED says (beyond the scope of the TAC) it did not know what the goods were, nor was it provided any directions on storage; DSC has no option to avoid the damage, which it understands was complete shortly after UNITED's improper storage.

As alleged in the pleading, and based on DSC's experience, custom and practice within the global industry pertaining to trade debt and factoring agreements, the storage of goods – whether for temporary storage pending a sale or as a result of canceled orders or rejected goods, etc. – is governed by a storage agreement (however formal or informal) between the vendor/guarantor (e.g. GORMET or GOURMET) and the storage facility (e.g. Grower's Refrigeration Company and UNITED).

As a result, DSC contends, upon information and belief, GOURMET stored the goods at the two cold storage facilities pursuant to oral and/or written agreements, whereby the contracting parties terms would include that the cheese was to be properly stored and preserved in its original condition for sale to an existing or prospective purchaser, and that the stored product (and proceeds from any sale) was also subject to then existing third party interests in favor of those who had provided financing in connection with the acquisition and intended sale of the cheese.

The TAC further alleges, the existence and perfection of such interests (at the time of storage) are commonly known and understood by cold storage facilities, since many importers and distributors do not have the capital resources to fund the initial purchase of significant quantities of a product absent a loan or other financing, such as a factoring agreement, and the

Page 8

Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint     16-cv-02785 YGR

stored products are held for the benefit of the persons or entities holding such interests.

Moreover, and contra to UNITED's suggestion, GOURMET, by virtue of the Factoring Agreement, had also unequivocally agreed to assign to DSC all of their rights, title and interest in, inter alia, the accounts receivable *and* the merchandise (the cheese) that comprises the transaction. As such, DSC's rights were in both the accounts receivable (its claims against GOURMET) and the cheese itself (its claims against UNITED). As a result, since UNITED is a cold storage facility, the general character of its business also establishes a duty to safeguard the goods, a food product, it was storing from damage or spoiling, subject to liability for damage to the stored goods – to both GOURMET and DSC. *See* Cal. Comm. Code §7204(a).

Unlike the plaintiffs in *Wesoloh* who could not establish a connection to the alleged injury, the damage to the cheese, (the title and interest of which is now alleged to belong to DSC by virtue of the Factoring Agreement) and was also being held for DSC's benefit, was caused solely by UNITED's improper storage, and whether or not UNITED had instructions or an independent obligation to know that cheese would be damaged if frozen, is merely another factual issue to be determined at a later date – not at the pleading stage.

Helpful in the final conclusion in *Beacon* was the Court's use of the *Biakanja* factors to restate the application of the factors to the facts of the *Beacon* dispute. Doing so in the instant case, and regardless of privity, DSC maintains that (1) UNITED's storage services were intended to benefit someone in DSC's position, i.e. an entity with a security interest, and, in fact, rights, title and interest in the cheese; (2) It was foreseeable that DSC would be among the limited class of those harmed by the negligent storage of the cheese (especially considering the vast quantity); (3) DSC has suffered injury and damages in that the value of its cheese (both as its property and collateral) was diminished (and the actual damage is established and quantified by the allegations regarding the mitigating sale to G&K); (4) In light of the nature and extent of UNITED's role as the storage facility, there is a close connection between its conduct and the injury DSC suffered. (5) Because of UNITED's role as a food storage facility, as well as its awareness that the limited class of persons outlined above would rely on its expertise to safely and properly store the cheese, significant moral blame attaches to UNITED's conduct; and (6) The policy of preventing

Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint     16-cv-02785 YGR

future harm to those reliant on UNITED's role as a storage facility, coupled with the Commercial Code supports recognition of a duty of care and imposing statutory liability on a warehouse for damages for improper storage.

In sum, DSC has adequately alleged a claim for negligence.

### C. **THE MOTION TO STRIKE MUST BE DENIED**

FRCP 12(f) permits a party to move to strike "any redundant, immaterial, impertinent, or scandalous matter." The matter sought to be stricken must fall within those categories. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-975 (9th Cir. 2010). The motion cannot be used as a vehicle for summary disposition of claims or damages. *Ibid*. Regardless of the reduction in theories of liability, the entire factual allegations in the complaint relate to and are not redundant, immaterial, impertinent, or scandolous with respect to the negligence claim.

### D. **ATTORNEYS' FEES ARE NOT WARRANTED**

In drafting the TAC (and the SAC), plaintiff has heeded the Court's admonishment regarding a party's Rule 11 obligations and expanded upon its allegations to include both additional facts as well as the factual foundation for matters stated upon information and belief. As stated above, the retention of allegations that originally related to other theories of liability continue to relate to DSC's negligence claim, damages, and mitigation efforts. Moreover, UNITED's claim for fees is procedurally improper as there has been no compliance with the provisions of FRCP 11(c)(2). As such, should any part of the motion be granted, fees should not be awarded.

### III. **CONCLUSION**

For the foregoing reasons, it is respectfully requested that the motion to dismiss be denied in its entirety, subject to the qualification regarding the declaratory relief claim. Should the Court grant any part of the motion, it is respectfully requested that DSC be granted leave to amend.

Dated: April 5, 2017　　　　　　　　　GORDON & REES LLP

By _____
　　Andrew D. Castricone
Attorneys for Plaintiff
DS-CONCEPT TRADE INVEST, LLC