UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DS-CONCEPT TRADE INVEST, LLC**, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>**MORGAN-TODT, INC., d/b/a UNITED COLD STORAGE**, a California corporation,<br><br>Defendant. | Case No. 16-cv-02785-YGR<br><br>**ORDER DENYING MOTION TO DISMISS; DENYING MOTION TO STRIKE** |

Plaintiff DS-Concept Trade Invest, LLC ("DSC") brings this action against defendant Morgan-TODT, Inc., d/b/a United Cold Storage ("United") alleging that it negligently stored 573,350.93 pounds of pecorino cheese ("the Cheese") improperly in the freezer, rather than the refrigerator.

DSC filed its third amended complaint ("TAC") on March 1, 2017, alleging one count for negligence. (Dkt. No. 42, TAC.)[1] Now before the Court is United's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 43.) DSC filed its opposition on April 5, 2017. (Dkt. No. 33.) United filed its reply on April 12, 2017. (Dkt. No. 45.) Defendant also moves to strike, pursuant to Rule 12(f), several allegations in the TAC regarding United's alleged interference with DSC's relations with third parties Gourmet Foods Imports, LTD., G&K Sales,

---

[1] On December 7, 2016, this Court granted United's motion to dismiss plaintiff's amended complaint. (Dkt. No. 33.) DSC filed its second amended complaint ("SAC") on December 21, 2016, and United filed a motion to dismiss the SAC on December 29, 2016. (Dkt. Nos. 35, 37.) Thereafter, the parties stipulated that DSC would withdraw its SAC, United would withdraw its motion to dismiss, and DSC would file the TAC. On January 26, 2017, this Court granted the stipulation and denied the pending motion to dismiss the SAC as moot. (Dkt. No. 41.)

and others.

Having carefully considered the pleadings and the papers submitted on this motion, and for the reasons set forth below, defendant's motion to dismiss and motion to strike are **DENIED**.[2]

## I. Relevant Background

Plaintiff DSC is a purchaser of accounts receivable (also known as "trade debt") from third-party trade companies that exports food products, including Gourmet Foods Imports, LTD, and its agent/affiliate through common ownership, Gormet Food Imports, LTD (collectively "Gourmet"). (TAC ¶¶ 3–6, 8 9.) DSC purchases trade debt from Gourmet pursuant to a "Factoring Agreement." (*Id.* ¶¶ 8–10.) Under the Factoring Agreement, Gourmet obtains and prepares to fill purchase orders for food products from a buyer, typically third-party Atalanta Corporation ("Atalanta"). Gourmet then designates DSC as the payee on these orders. (*Id.* ¶ 12.) DSC confirms the purchase orders with the buyer and advances funds to Gourmet. (*Id.*) Gourmet uses these funds to acquire and ship the order to the buyer. (*Id.* ¶ 13.) After the buyer receives the goods, DSC is paid "via direct collection of payment" from the buyer. (*Id.*) DSC alleges that this "course of business" is "often employed in international financing in the food and beverage industry." (*Id.* ¶ 13.) According to DSC, factoring agreements are "common to trade finance allowing vendors, like Gourmet, access to capital in exchange for absolute divestment by the vendor" in favor of the lender of the "goods in-transit and, ultimately, the anticipated forward payment for those goods from the vendor's buyer." (*Id.* ¶ 20.)

Defendant United is a cold storage facility located in San Francisco, California. (*Id.* ¶ 18.) Between June and August 2015, DSC advanced funds to Gourmet in connection with Gourmet's purchase of the Cheese. As a result, Gourmet generated $2,063,883.33 in invoices payable to DSC. (*Id.* ¶ 14, Exh. D.) DSC contends that the Cheese arrived at United's cold storage facility in San Francisco (*id.* ¶ 18, Exh. E) but none of the involves have been paid. (*Id.* ¶ 15.) According to DSC, United improperly stored the Cheese in the freezer, rather than the refrigerator, which

---

[2] Defendant initially sought attorney's fees, but has since withdrawn its request and instead seeks leave to file a motion for attorneys' fees under Federal Rule of Civil Procedure 11(c)(2). In light of the Court's ruling, defendant's request is **DENIED.**

2

diminished the value of the Cheese by rendering it unfit for human consumption. (*Id*. ¶¶ 36–40.) To secure repayment of the advances and other monetary damages, DSC brought three federal suits, namely against (1) United and (2) Gourmet in this Court, and (3) Gourmet and Atalanata in the U.S. District Court for the District of New Jersey. *See DS-Concept Trade LLC v. Gourmet Food Imports, LLC*, et al. Case No. 3:16-cv-00466 YGR; *DS-Concept Trade LLC v. Atalanta Corporation, et al.*, Case No. 2:16-cv-00429-SRCCLW.

According to DSC, under the Factoring Agreement the Cheese is "property in which DSC holds a beneficial interest (or, alternatively, collateral in which DSC has a security interest)." (*Id*. ¶ 22, Exh. A §§ 11, 14.) DSC alleges that United owed it a duty of care to store the Cheese reasonably because of this beneficial and/or security interest in the Cheese. (*Id*. ¶¶ 20, 57.) Plaintiff alleges that, "based on industry customs and practices," United understood or should have understood that the Cheese and proceeds from any sale were subject to DSC's beneficial and/or security interest. (*Id*. ¶ 53.) Further, DSC claims that "[b]ased on industry customs and practices . . . as well as the food cold storage facility's general standard of care," United agreed, pursuant to its agreement with Gourmet, to "ensure that the [C]heese was stored properly to maintain its condition and value for G[ourmet] a*nd third parties with any beneficial and/or security interest, i.e. DSC*." (*Id*. ¶ 55.) (Emphasis supplied.)

## II. Legal Framework

### A. Motion to Dismiss

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

3

(2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 554–55 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). The Court will not assume facts not alleged, nor will it draw unwarranted inferences. *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

### B. Motion to Strike

Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystem, Inc.*, 758 F.Supp. 1335, 1339 (N.D.Cal. 1991). When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." *In re 2TheMart.com, Inc. Sec Lit.*, 114 F Supp.2d 955, 965 (C.D.Cal. 2000). A court may only strike portions of a complaint in four limited circumstances, namely where it finds the pleading to contain "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A matter is "immaterial" where it is "has no bearing on the controversy before the Court." *In re 2TheMart.com*, 114 F.Supp.2d at 965. Allegations have been found "impertinent" where they are "not responsive or irrelevant to the issues that arise in the action and which are inadmissible as evidence." *Id*. A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action. *Id*. Where the moving party cannot demonstrate the material will prejudice a party, "courts frequently deny motions

4

to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f)." *New York City Employees' Retirement System v. Barry*, 667 F.Supp.2d 1121, 1128 (N.D. Cal. 2009) (internal quotations omitted).

**III. Discussion**

A. Motion to Dismiss

Defendant moves to dismiss plaintiff's sole claim for negligence. Under California law, "[t]he elements of a cause of action for negligence are well established. They are (a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996) (citation and internal quotation marks omitted). A duty may be owed by a defendant directly to a plaintiff or to a class of which the plaintiff is a member, may arise by statute or contract, or "may be premised upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human society." *Mintz v. Blue Cross of California*, 172 Cal.App.4th 1594, 1610 (2009) (citation and internal quotation marks omitted).

The parties dispute whether United owed DSC a duty of care to store the Cheese properly. California law provides two potential grounds for imposition of such a duty: privity of contract and the six-factor test articulated in *Biakanja v. Irving*, 49 Cal.2d 647 (1958). In its motion, United argues neither ground exists here. DSC does not argue that privity exists. Instead, plaintiff argues that based on industry practice and customs United understood or should have understood that the Cheese was being stored subject to the security and/or beneficial interests of a third-party financier such as DSC. (*Id.* ¶ 55.)[3] The Court addresses each.

1. Contractual Privity

The Court first analyzes whether contractual privity gives rise to a duty. Plaintiff's

---

[3] In the alternative, plaintiff argues that the Court should not rule on the duty issue at the pleading stage. *Beacon Residential Cmty. Assn. v. Skidmore, Owings & Merrill LLP*, 59 Cal. 4th 568, 578 (2014). In light of the Court's holding, the Court need not address this argument.

5

complaint does not allege that there is contractual privity between DSC and United. To the contrary, plaintiff's complaint actually alleges that *defendant and Gourmet* had an agreement to store the Cheese. (TAC ¶ 34.) The Court concurs. Thus, the TAC does not contain sufficient to show contractual privity.

2. *Biakanja* Factors

Having found a lack of privity, the Court now turns to the *Biakanja* factors. To allege a duty of care, the complaint should include facts sufficient to satisfy the following factors: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. *See Weseloh Family Ltd. P'ship v. K.L. Wessel Const. Co.*, 125 Cal.App.4th 152, 164 (2004); *Bily v. Arthur Young & Co.*, 3 Cal.4th 370 (1992); *Biakanja*, 49 Cal.2d at 647 (1958).

With respect to the first factor, DSC alleges that, based on its "experience, custom, and practice within the global industry pertaining to trade debt and factoring agreements," United understood or should have understood that the Cheese was to be stored properly and that the Cheese, as well as proceeds from the sale of the Cheese, was "subject to then existing third party interests in favor of those who had provided financing in connection with the acquisition and intended sale of the cheese." (*Id*. ¶ 20.) According to DSC, the Cheese was being stored at United's facility "for the benefit of DSC to receive proceeds from its ultimate sale which would fully or partially discharge Gourmet's obligations to DSC." (*Id*. ¶ 55.) Further, it alleges that based on "industry customs and practices" the agreement between Gourmet and United obligated United to ensure that the Cheese was stored properly not just for the benefit of Gourmet, but also for "third parties with any beneficial and/or security interest." (*Id*. ¶ 55.) These allegations, taken as true, create a reasonable inference that the transaction between Gourmet and United was intended to benefit DSC.[4]

---

[4] Defendant argues that the contract between Gourmet and United was plainly intended to benefit Gourmet, not DSC. This argument reflects contractual privity and ignores the separate and distinct test *absent* privity.

6

United argues that these two allegations are mere legal conclusions which the Court is not bound to accept as true. Defendant overreaches. The allegations at issue are based on DSC's knowledge of industry customs and practices, not legal speculation. Thus, the first factor weighs in favor of imposing a duty.

Turning to the second factor, foreseeability, United argues that it did not even know of DSC's existence before placing the Cheese in its freezer, and therefore, plaintiff merely speculates when alleging that United should have known it was required to store the Cheese to "avoid loss to the owner and those with a beneficial and/or security interest." (*Id*. ¶ 58.) The Court disagrees. DSC is not required to show that United actually knew that DSC held a beneficial and/or security interest in the Cheese when the Cheese was frozen. Rather, it must merely allege that harm to a third party financier in DSC's position was foreseeable to United. DSC alleges that the agreement between Gourmet and United obligated United to ensure that the Cheese was stored properly for the benefit of Gourmet *and* third parties with beneficial and/or security interest." (*Id*.) This creates a reasonable inference that harm to a party in DSC's position was a foreseeable result of United's failure to store the Cheese properly. As such, the second factor weighs in favor of imposing a duty.

With respect to the third factor, that is the degree of certainty of DSC's injury, it is undisputed that none of the monies due under the invoices has been paid. (*Id*. ¶ 14.) DSC has plainly suffered an injury. Thus, the third factor weighs in favor of imposing a duty.

On the next factor the parties disagree as to whether United's conduct is sufficiently connected to this injury. United argues that the source of DSC's injury is the failure of Gourmet and Atalanta to pay plaintiff, which is the subject of a separate lawsuit. DSC need not allege that United's conduct was the direct cause of its injury. Rather, DSC must merely allege a "sufficiently 'close connection'" between United's conduct and DSC's injury. *Beacon*, 59 Cal. 4th at 578 (2014) (quoting *Bily*, 3 Cal.4th at 400). It has so alleged. While Gourmet's failure to pay DSC may indeed be the direct cause of DSC's injury, plaintiff alleges that United's conduct had a "ripple effect" which resulted in harm to DSC. The gravamen of plaintiff's theory is that United, by improperly storing the Cheese, "compromised DSC's beneficial and/or security interest and ability to recover its losses" by making it impossible to "arrange a sale of the [C]heese at its

7

market value." (TAC ¶ 39.) DSC alleges that United was responsible for storing the cheese yet failed to store it properly. United's failure to store the Cheese properly, in turn, harmed DSC by "essentially eliminating" the ability for any party to arrange a sale at the Cheese's market rate, thus rendering Gourmet unable to pay DSC. (TAC ¶ 39.) The Court finds that the connection between United's conduct and plaintiff's injury is sufficiently close. Accordingly, the fourth factor weighs in favor of imposing a duty.

With regard to the fifth and sixth factors, plaintiff argues that (1) moral blame attaches to United's conduct because, as a food storage facility, it must have been aware that a limited class of persons would rely on it to safely store the Cheese, and (2) the policy of preventing future harm to those relying on United's role as a food storage facility, coupled with the Commercial Code, supports imposing liability on warehouses for damages due to improper storage. Plaintiff does not persuade. DSC fails to articulate how its allegations give rise to moral blame. Further, plaintiff fails to explain how the Commercial Code creates statutory liability to plaintiff, rather than to Gourmet. Moreover, if it is ultimately determined that defendant did, in fact, store the Cheese negligently, Gourmet may still hold defendant liable for its negligence. In fact, Gourmet has filed a lawsuit against United which seeks to do just that. Thus, Court finds the fifth and sixth factors weigh against imposing a duty.

The Court finds that plaintiff's allegations regarding (1) DSC's beneficial and/or security interest in the Cheese and (2) standards, customs, and practices of the global trade industry pertaining to trade debt and factoring agreement are sufficient to state a plausible claim for negligence. Taking plaintiff's allegations as true, plaintiff has satisfied four of the six *Biakanja* factors: (1) the transaction between Gourmet and United was intended to affect DSC; (2) harm to DSC was foreseeable; (3) plaintiff plainly suffered injury; (4) and defendant's conduct and the injury are closely connected. Thus, defendant's motion to dismiss is **DENIED**.

B. Motion to Strike

The Court now turns to defendant's motion to strike pursuant to Rule 12(f). United has failed to show how the allegations at issue are "redundant, immaterial, impertinent, or scandalous . . . ." Fed. R. Civ. P. § 12(f). Those allegations relating to DSC's alleged beneficial and/or security interests are relevant to the duty issue. The allegations regarding interference with

third-party contracts could potentially be relevant to damages or mitigation. Where, as here, there is doubt whether the allegations in the pleadings might be relevant, the motion to strike should be denied. *See In re 2TheMart.com*, 114 F.Supp.2d at 965.[5]

Therefore, defendant's motion to strike is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's motion to dismiss and motion to strike. Defendant shall answer the TAC in 21 days.

This order terminates Docket No. 43.

**IT IS SO ORDERED.**

Dated: May 18, 2017

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

---

[5] Further, defendant has made no showing that the allegations at issue "may prejudice one or more of the parties to the suit." *See New York City Employees' Retirement System*, 667 F.Supp.2d at 1128 (internal quotations omitted).

9